Vickery, J.
The plaintiff, the Humphrey Company, filed tits petition against the Cleveland Railway Company, asking for an injunction to prevent the Cleveland Railway Company from charging more than a single fare of five cents from the city of Cleveland to its park, known as Euclid Beach Park, now in the limits of Cleveland, on the shores "of Lake Erie about ten miles east of *610 the Public Square, basing its right to maintain such injunction upon a contract of lease that was entered into between the Humphrey Popcorn Company, now the Humphrey Company, and the Cleveland Electric Railway Company, now the Cleveland Railway Company; in which contract it was provided that, in consideration of the Humphrey Company permitting the Cleveland Electric Railway Company to occupy, and loup for track purposes, a certain portion of its ground in the park, the Cleveland Electric Railway Company was, during the life of that contract or lease, to carry passengers from the city of Cleveland to the park for one fare of five cents. This contract or lease was entered, into on the 15th day of May, 1901, and was to expire on the 1st day of January, 1906. Said agreement or lease was duly executed and acknowledged, and recorded in the office of the recorder of the county.
In pursuance of, and in accordance with said agreement, the Cleveland Electric Railway Company built the loup into the grounds of the Humphrey Company, and carried pasengers from the city of Cleveland to the park for a- single fare of five cents during the entire lifetime of said lease, or agreement, at the expiration of which they continued to carry passengers at the same rate of fare, under the same arrangement, year after year, down to the 10th day of March, 1910, when, by order of the mayor of the city of Cleveland, it is claimed they were directed to charge two fares, or ten cents to Euclid Beach Park from the city of Cleveland; and this suit is brought to enjoin the railway company from charging the additional fare.
The railway company files an answer admitting the execution of the paper set up in the plaintiff’s petition, denies it to be a lease, claims that it was a license, granted by the Humphrey Company to the railway company, that was irrevocable during the term stipulated in the paper writing, but after that time it was revocable by either party by giving notice; and they therefore claim that, by virtue of the ordinance passed by the village of Collinwood, giving the Cleveland Electric Railway Company the right to construct their tracks through what was then the village of Collinwood, they were authorized to charge one fare to all points west of Adams avenue in said village, and *611 one additional fare from Adams avenue eastward to the end of the line. And the railway company claims that, by virtue of the so-called Tayler ordinance, that was passed by the council of the city of Cleveland in December of 1909, when -it was so directed by the city of Cleveland, it was compelled to charge the maximum rate of fare from the Public Square in the city of Cleveland to Euclid Beach Park; and that it was directed and ordered by the mayor of the city to so charge. And it says, further, that the contract between the Humphrey Company and ■the Cleveland Electric Railway Company was an illegal contract, and is of no force and effect; and asks to have the petition dismissed. And it further says that, by reason of the provision contained in the Tayler- grant, and the supervision that the city has over the operation of street railroads within the city of Cleveland, the city of Cleveland is a necessary party to the determination of this suit, and therefore makes the city of Cleveland a party, and summons was issued,' upon their answer and cross-petition, and the city is now before the court.
This is, in brief, a statement of the various contentions of the parties.
If it were not for the interest that the city of Cleveland has in this suit, and if it were not that they had been brought into the case, the matter would be one of comparative simplicity. Eliminating that part of the case for the moment, what is there before the court? Simply what appears to be a contract between two corporations, both of which had legal capacity to contract; and then for the court to consider the force and effect of that contract.
There .can be no question but what the Humphrey Company had the power and the right to make this contract, or lease, or whatever it may be, to the Cleveland Electric Railway Company. It was the owner of this park, and was desirous of having people brought to the park. The Cleveland Electric Railway Company was a street railroad company, engaged in carrying passengers for hire; and it was for the mutual interest of both the Humphrey Company and the railway company that a large number of passengers should be carried to the beach; and I can not see any objection in law to a private corporation, such *612 as the Humphrey Company was, permitting the Cleveland Electric Railway Company to deliver passengers into its grounds, and to provide that no other company should run over these grounds. And since the Humphrey Company owned the docks or the landing from the lake side of the park, and it was not a public service corporation, I see no reason why it should not make such restrictions as it saw fit as to the landing of boats, or in preventing the landing of boats, at that dock if it preferred to have its patrons come by land. And so that clause in the contract which provided that steamboats, if they brought passengers, should charge ten cents each trip, or fifteen cents a round trip, is not in contravention of law, in my opinion. Of course if it were, I would agree with the counsel for the defendant that the entire contract was void; but I have been shown no authority which holds that such an agreement would be illegal. Consequently I hold that the contract was a valid contract, and one such as both parties had a right and the power to make.*
The next question to'be discussed is, what was this contract? It seems to me that it is a lease. It uses the language that leases ordinarily use. It starts out, “This indenture of lease, made,” etc. And the next clause, “that the said first party hath let and leased, and doth hereby let and lease unto the second party, its successors and assigns, the following described premises: ” In the third clause it uses words of grant; and so on through the entire instrument itself it uses words that are apt and usual in leases; and the subject-matter was a matter about which leases are frequently made. Indeed, in the 102d Indiana Reports, at page 153, there is a ease almost on all fours with the case at bar, and the Supreme Court of Indiana held it to be a lease. I therefore have no hesitancy in holding that this paper writing was a lease between the Humphrey Company and the Cleveland Electric Railway Company; and by the terms of that lease the railway company held under it until the 1st of January, 1906; and it continued to hold under and by virtue of the same arrangement down to the time when it raised the fare on the 10th day of March, this year.
*613 That brings me to the discussion of the question of the rights of the parties when a lease has been entered into and the parties hold over under the same terms after the expiration of the lease. It seems, from the authorities, from the 57th Ohio St., and subsequent decisions -of our Supreme Court, that where the original lease was for a term of years, a subsequent holding over extends the term from year to year; and after the lessee has continued to hold over beyond the year, he becomes a tenant for the next ensuing year. This seems to be, I say, the trend of authorities, although there are some authorities which seem to hold that there has been an extension, by holding over, for a new term equal to the length of the first term. I think the authorities in Ohio are now to the effect that it is holding over from year to year, and the tenancy becomes a tenancy from year to year. Whatever line of authorities one would adopt, the contract under question would be in force at the present time. If the lease were extended, by holding over, for a new term equal to the length of the first term, then the lease would not expire until the 15th day of July next; and if it was a tenancy from year to year, it would not expire until the 1st day of January. In either event, the plaintiff would be entitled to the relief sought if the relief sought were proper.
That brings me to a discussion of the question as to whether injunction is the proper remedy.
Ordinarily, when parties enter into a contract, and one or the other breaks the contract, courts of equity will not intervene, but will leave the parties to their remedy at law, that is, an action in damages. But would an action in damages be an adequate remedy here? Who can tell what the damages would be to the Humphrey Company if this contract was broken, and was not specifically enforced by injunction? We would have to indulge in the realms of speculation to find out what the damages were. The success of a park depends on so many things that it would be absolutely impossible to show by any sort of satisfactory evidence what the damages would be by having ten cent fare instead of five cent fare. Other attractions in town, or the lack of other attractions, might deteriorate or add to the attendance 9.t Euclid Beach Park. And so, to get at the damages, it would *614 be indulging in the wildest kind of speculation; and, consequently, one could have no hesitancy in coming to the conclusion that a suit for money damages would not be an adequate remedy. And wherever there is not any adequate remedy at law, equity always will intervene. So I think, and so hold, that an injunction is the proper remedy to enforce the performance of this contract by preventing the railway company from charging more than the rate of fare specified in its contract/
Now, if it were not for subsequent legislation by the council of the city of Cleveland, this would dispose of the whole question; and perhaps it ought to dispose of it as it is; but now we have this singular situation: It is claimed that the Cleveland Railway Company can be compelled by the city of Cleveland to charge ten cents fare from the city of Cleveland to Euclid Beach. We have the singular situation of a railroad corporation standing up in court and asking, in the interest of public policy, that it be permitted to charge the greatest rate of fare that it is .possible for it to charge. I do not think that such an unique claim was ever made seriously in court before. It grows out of a somewhat anomalous situation. I have already referred to the ordinance of the village of Collinwood, which granted the right to the Cleveland Electric Railway Company to be upon the streets of the village of Collinwood from the point on the line between the city of Cleveland and the village of Collinwood to Euclid Beach; and the two ordinances seem to confer the power upon the Cleveland Electric Railway Company to charge ten cents fare from the Public Square in the city of Cleveland to Euclid Beach; and that would be so unless the ordinance of August, 1906, that was passed by the village of Collinwood, giving certain rights to the Cleveland Electric Railway Company, made the ordinances then in force, so far as applicable, to continue in force by virtue of the new ordinance. Now, at this time, it must be remembered that the fare to Euclid Beach was one fare, and had been for a period of more than five years; and I suspect the village council of Collinwood lost sight of the ordinance extending to the Cleveland Electric Railway Company the right to extend its tracks east of Adams avenue, and gave them permission to charge one extra fare; and it was in the minds of *615 the council of the village of Collinwood that the only ordinances applicable were the ordinances then being acted under, to-wit, the right to charge one fare.
I say it is questionable whether that would not be a fair construction of what the ordinance of August, 1906, contemplated. But suppose that is true. Suppose when the council of the city of Cleveland passed the Tayler grant, they had in mind -that the right to charge ten cent fare to Euclid Beach existed; and that, for the purpose of making the rate of fare provided for in the Tayler grant; to-wit, three cents, a success, it was important that extra cost of hauling passengers to the suburbs should not militate against the ultimate success of the three cent grant in the city of Cleveland. In other words, that by reducing the fare in the suburbs, and thus making the city bear a greater proportion of the entire expense than it otherwise would, it would tend to make three cent fare a failure, or less likely to become a success, and so provided that the maximum rate of fare should be charged to all the suburbs.
It seems that the city solicitor has decided, and I think rightfully, that the village of Collinwood, although now a part of the city of Cleveland, is not entitled, under the Tayler grant, to come in under the provisions of that ordinance. The question-will still arise, just how far the city of Cleveland can compel a railroad company to charge a higher rate of fare to a park in the same community in order to benefit, if you please, the larger portion of the public. To my mind, the greatest question is not, whether three cent fare be a success or not. If, to make it a success, it must be to the detriment of the service and the riding public, then the sooner that it is demonstrated to be a failure the better it will be for the public. The lowest possible fare consistent with service that is adequate for the demands and comfort of the public is provided for in the Tayler ordinance; and if that is hot three cents, then it should be whatever is necessary to meet those requirements. But if it could be demonstrated that, instead of losing money by carrying passengers to Euclid Beach for five cents, you would make money over the ten cent rate, then the only reason that could be urged in favor of this increased fare has been done away with; and the resolution of *616 the council of the city of Cleveland is in evidence, which shows that, in their opinion, the earnings would be increased rather than decreased by the adoption of a five cent rate to Euclid Beach. In any event, people who ride to Euclid Beach are people, in the main, from the city of Cleveland for whose benefit the only argument is made for the increase of fare to Euclid Beach; so that a low rate of fare to Euclid Beach will not operate against the success of three cent fare within the city of Cleveland; and it is not, a question of the greatest good to the greatest number of people. It resolves itself down to the greatest good to the people of Cleveland itself.
Now, the railway company claims that the only reason why it has raised the fare is because the city of Cleveland ordered it to do so. And it is claimed by both the plaintiff and the defendant, over the objection of the city, that the city of Cleveland is a proper party in this litigation, so that the rights of all the parties can be determined. It would seem that that argument was sound, because if this action should be decided, as it might be, by simply holding that this lease was a valid lease, and enjoining the railway company from increasing its fare, then the city of Cleveland, by virtue of the Tayler grant, it not being a party to this suit, could immediately bring an injunction proceeding to compel the Cleveland Bailway Company to charge ten cent fare. So from that mere statement, it can be easily seen that fhe city of Cleveland is a proper party in this action.
And that brings me to the discussion of the question as to the power of the city council to pass the Tayler grant compelling the railway company to increase its fare, notwithstanding it had a valid contract with a certain private corporation not to increase its fare to a certain point. That involves the question as to the powers of a city council to pass laws or ordinances having the force of laws impairing the obligation of a contract; and I do not think, under the state of our law, that the city council would have any right or any power to pass such a law or ordinance; and so far as the law impairs any existing contract, so far that ordinance would be inoperative. I think that has been the law in this country ever since the decision of the Dartmouth College case, decided by the Supreme Court, of the *617 United States more than seventy-five years ago. I therefore think, so far as the Tayler ordinance undertakes to compel the Cleveland Railway Company to increase its fare where it has contracts, either with public bodies such as municipalities, or with private persons, it is inoperative.
I therefore overrule the demurrer of the city, and hold that it is a proper party in this case; .and make the injunction prayed for by the plaintiff perpetual, and the.decree may be prepared accordingly.